Matter of CD v GS (2005 NY Slip Op 51296(U))

[*1]

Matter of CD v GS

2005 NY Slip Op 51296(U)

Decided on August 11, 2005

Family Court, Westchester County

Duffy, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 11, 2005

Family Court, Westchester County
In Proceedings Under Article 6 of the Family Court Act CD, Petitioner,
against
GS, SR., Respondent.
V -13844/04A

Deidre Jackson, Esq.
Attorney for Ms. CD
30 South Broadway
Yonkers, New York 10701
Rosalie Leslie, Esq.
Attorney for Mr. GS, Sr.
45 So. Broadway Suite 223
Yonkers, New York 10701
Althea Richardson, Esq.
Law Guardian
34 South Broadway Suite 710
White Plains, New York 10701

Colleen D. Duffy, J.
In September 2004, Petitioner-mother filed a petition seeking modification of a prior court order, entered April 6, 1999 (the "1999 Order") in order to relocate with her son, GS, Jr. (DOB: 7/23/1990) (hereinafter, the "Subject Child") to Florida. Respondent father GS, Sr., opposes the move. Thereafter, in February 2005, Mr. S filed a petition seeking modification of the 1999 Order to obtain joint legal custody and full physical custody of the Subject Child
 Under the terms of the 1999 Order, Ms. D was granted custody of the Subject Child. Although the 1999 Order does not specify whether Ms. D obtained legal custody, physical custody or both of the Subject Child, the custom and practice of the parties, as adduced at trial, has been that Ms. D has had sole legal and physical custody of the Subject Child with liberal visitation by Mr. S.
On January 18, 2005, a fact finding hearing was commenced. The hearing was not concluded on that date and was continued on nine additional dates March 23 and 25, May 23, 24, and 25, July 5, 7, 14 and 19. The trial was concluded on July 19, 2005.
The Subject Child, who turned 15 while this case was sub judice, is a special [*2]needs child with significant physical and cognitive impairments including speech and language difficulties, deafness or significant hearing loss, loss of vision in one eye, mobility difficulties, and asthma, as well as severe cognitive developmental delays. The Subject Child communicates primarily through sign language and single word speech (which speech apparently also is difficult to understand unless the person interacting with the Subject Child has had significant involvement with him). The credible testimony of both Ms. D and Ms. Shulman, one of the Subject Child's teachers, established that developmentally the Subject Child is at a cognitive level of a 5 or 6 or 7 year old (first-grader). In light of the Subject Child's significant cognitive and physical impairments, no in camera hearing was held by this Court.[FN1]
The Court has considered all of the credible testimony and evidence, which included the testimony of two of the teachers of the Subject Child, the school psychologist at the New York School for the Deaf, the Subject Child's step-mother, the fiancé of Ms. D, Ms. D's sister, the home health aide for the Subject Child, extended family members of Mr. S, a close friend of Mr. S, and the testimony of the parties themselves.
While the Court considered all of the testimony and evidence submitted at trial, given the extensive nature of the record, the Court will address only the crucial testimony and evidence critical to its decision on the best interests of the Subject Child.
For the reasons set forth below, this Court hereby denies Ms. D's relocation petition finding that she failed to prove that the move would be in the Subject Child's best interests. If Ms. D nonetheless decides to relocate out of the Westchester-Bronx area, the Court will modify the current custody order to grant sole legal and physical custody of the Subject Child to Mr. S with unsupervised liberal visitation by Ms. D as set forth further in this Order.
Where a custodial parent seeks to change her residence in a manner that would detrimentally affect the other parent's ability to enjoy frequent and regular contact with the child, the relocating party bears the burden of establishing that the proposed move is nevertheless in the best interests of the child. Tropea v. Tropea, 87 NY2d 727. Among the factors to be considered are: Each parent's reasons for seeking or opposing the move; the quality of the relationship the child has with each of the parents; the expected impact of the move on the relationship the child would have with each of the parents; the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move; and the feasibility of preserving the relationship between the non-custodial parent and child through suitable visitation arrangements. Id.
With respect to each party's reasons for seeking or opposing the move, the credible testimony established that Ms. D has been looking to relocate to another location; she explored Nevada as well as Florida but ruled out Nevada because of its poor reputation regarding education for the deaf. Ms. D contends she selected Florida [*3]to relocate to because of its climate and because the Subject Child would be mainstreamed in a regular class with children of his own age and that the Subject Child could enjoy the outdoors and be provided better opportunities to socialize. According to Ms. D, the Subject Child is "afraid to socialize."
The Court finds that Ms. D's testimony regarding her strong concern about her son's well-being is credible but that although relocation to Florida might be in her best interests, she was unable to prove that such relocation is in the best interests of the Subject Child. Indeed, the credible testimony adduced at trial established that Ms. D's interests may be the driving force behind the move to Florida. Notably, Al H, Ms. D's fiancé, now is living in Florida.
Specifically, Mr. H testified that he already has moved to Florida, purchased a home and, at the time of his testimony, was expecting a job offer as an investigator with the federal marshal's office in that area of Florida. Mr. H testified that he currently is retired from the New York City Police Department, that he financially supports Ms. D and the Subject Child, that he would pay to have the Subject Child travel to New York to visit his father, and that Ms. D could be a "stay-at-home" Mom in Florida.
Mr. S credibly established that his reason for opposing the move is that his frequent and regular contact with his son will be eviscerated, that his son's disabilities would prevent any type of meaningful telephone contact, that his communication with his son primarily is sign-language based and that his son is not and would not be able to communicate with him in any meaningful way through email or letter writing. Mr. S also credibly testified that he does not have the financial means to pay for travel to Florida to visit his son on any regular basis, nor does he have any family in that area with whom to stay if he were to visit
In this case, in light of the purported reasons by each party seeking or opposing the move, the most critical factors the Court must consider are the impact of the move on the Subject Child's relationship with his father, the ability of the father to maintain contact with the Subject Child on a regular and frequent basis or through alternate visitation arrangements; and the requirement that Ms. D establish that the child's life would be enhanced by the move.
With respect to the quality of the relationship the child has with each party, although the credible evidence clearly established that Ms. D is the primary caretaker of the Subject Child, Mr. S also has played a significant role in the upbringing of the Subject Child. It is uncontroverted that both parents care deeply for their son, and, until the relocation issue arose, apparently interacted in a cooperative and amiable fashion to ensure that their son's needs were met.
With respect to the father's relationship with his son, although contradictory testimony was adduced at trial about the length of time and extent that Mr. S is away from the Subject Child during hunting season which typically runs from October through December, the uncontroverted testimony established that the Subject Child visits with Mr. S on a regular and frequent basis. Whether that visitation occurs three or four weekends per month or whether Mr. S is present or absent during some or all of those weekends during hunting season is not dispositive with respect to his relationship with his son. According to the credible testimony, the hunting season lasts approximately two months about eight weekends. Notably, there is no evidence whatsoever that Mr. [*4]S has gone for two months without seeing his son. Moreover, if the relocation were approved, there could be a total of approximately eleven months out of the year that Mr. S would not see the Subject Child.
Mr. S credibly established that he is a primary figure in his son's life, that he has a strong and close bond with his son, that he has frequent and regular quality interaction with his son including attending extended family events, going to the movies, going hiking, fishing, and other such activities. Mr. S also established that he does "home work" with his son, he does "flash cards" with his son, and he has attended some school functions, including a meeting to address his son's individualized education plan when Ms. D could not attend.
The Court also finds credible Mr. S 's testimony that he has been unable to more fully participate in his son's educational planning as Ms. D has legal custody and the teachers at the school would not speak to him about his son without Ms. D 's consent.
Moreover, the credible evidence showed that during crisis periods when the Subject Child has been hospitalized for either surgery or illness arising out of or relating to asthma, which incidents, unfortunately, have occurred too often in this young child's life, Mr. S has shared in the parental responsibilities of caring for his son and being present at the hospital. Mr. S also credibly established that all of the Subject Child's paternal extended family resides in the New York area and that there is no maternal or paternal extended family in Florida to provide support and/or assistance if needed for the Subject Child.
Accordingly, although it is uncontroverted that Ms. D has borne the lion's share of responsibility with respect to addressing the needs - and the special needs - of the Subject Child, it also is clear that Mr. S is an active participant in the Subject Child's life and has demonstrated an ability to address the special needs of the Subject Child as well. For example, Mr. S took sign language classes to become proficient in order to be able to communicate with his son.
 With respect to the impact of the move on the relationship with each party, other Courts in relocation cases have noted that there are some families for which a change in the visitation schedule by reducing ordinary weekend visits and substituting extra summer and long weekend visits may have no detrimental impact on the relationship between the non-custodial parent and the child. See Tropea, 87 NY2d at 738. This is not such a case. Indeed, particularly in view of the Subject Child's special needs, the Court finds that the Subject Child's relocation to Florida would significantly and detrimentally affect Mr. S 's relationship and visitation with his son.
As an initial matter, the Court notes that the Subject Child currently has, and has had, a twelve month curriculum at the New York School for the Deaf, with other year round home-based services (specifically, a home health aide) provided by the school district. The credible testimony from two of the Subject Child's teachers, Ruth Shulman and Ellen Miller, established that the school recommends the twelve month program for the Subject Child and that, according to Ms. Shulman, he "would regress if he were not" in the twelve month program. Ellen Miller also testified that "pursuant to [her] training children with special needs should be in school year round."
Significantly, Ms. D presented no evidence whatsoever that the school system in [*5]Florida has a twelve month program to service the special needs of this Subject Child.[FN2] Moreover, even if such a program exists in Florida and the Subject Child were enrolled in it, such enrollment would prevent the possibility of significant summer visits between the Subject Child and his father as a substitute for the current arrangement of every weekend. Either the Subject Child would suffer from not receiving year-round educational services or his father would be limited to very minimal visits in New York with his son to coincide with any school recesses. The evidence shows that in the Subject Child's current school the year-round program typically includes recesses one week in duration occurring three or four times per year. The Court notes that no evidence has been submitted to show what types of recesses exist during a twelve-month program in Florida, if any such program even exists.
The credible evidence also has established that the Subject Child has not and could not travel alone. Thus, any visits by the Subject Child to the father in New York, if such relocation were approved, would require an additional person to travel with him, at, of course, an additional cost, to and from the locations. Such visits necessarily would be subject to the availability of an additional person to do such traveling.
Mr. S also credibly testified that he is financially unable to travel regularly by either airplane or car - to visit his son as the travel costs are prohibitive and he also would have to stay in a hotel during such visits. Moreover, the credible evidence has shown that Ms. D is, and will be, financially dependent upon Mr. H. Although Mr. H credibly testified that he would be willing to pay for the Subject Child to travel to New York, Mr. S necessarily would have to depend upon the largess of Mr. H in order for that to happen as Mr. H is not a party to the action nor has any legal or financial obligation in this matter. If Mr. H were to fail to pay for the costs of the visit, Mr. S 's only recourse would be to return to Court to seek a modification or file a violation of the Court order.[FN3]
Moreover, as noted above, the special needs of the Subject Child also prevent any meaningful telephone or email or letter writing contact between the father and son to substitute for regular weekly visitation and interaction. Accordingly, the Court finds that Mr. S has credibly established that his son's relocation to Florida would effectively eviscerate any regular contact the Subject Child has with him and that the relocation would significantly and detrimentally impact his relationship and the quality of his interaction with the Subject Child.
Finally, the Court finds that Ms. D has failed to prove by a preponderance of the evidence that the Subject Child's quality of life would be improved by the relocation. Ms. D contends that because the Subject Child suffers from asthma relocating him to [*6]Florida will allow him to more fully enjoy the outdoors and may provide better opportunities for him to socialize.
With respect to the issue of the Subject Child's asthma, there was contradictory testimony about the frequency, cause and extent of his illnesses arising from the asthma. It is clear from the evidence adduced at trial that the Subject Child does not fare well with respect to breathing issues when he is outside in the cold for any duration of time. However, it is equally clear from the evidence adduced at trial that the Subject Child also has the same such breathing problems during hot and humid temperatures and that his fair complexion makes him particularly sensitive to the sun. Indeed, the Subject Child wears a hat and long sleeves when he is outdoors during the summer months. Ms. D's contention that the Subject Child will enjoy a greater quality of life or better health in Florida than in New York simply is unsupported by any evidence at trial. Indeed, although Ms. D's petition alleges that the Subject Child's "doctor feels that [the Subject Child] could benefit from a warmer climate" no such medical testimony was introduced at trial. Indeed no medical testimony regarding how the relocation could benefit the Subject Child was even offered.
With respect to Ms. D 's contention that the child is afraid to socialize, the credible testimony of her own sister, M.D, as well as that of the Subject Child's teachers, Mr. S 's sister K. M., and Mr. A.M., Mr. S 's friend, wholly belie that assertion. The uncontroverted evidence shows that the Subject Child is a social child who seeks to interact with others. Indeed, Mr. St, his wife R.C., and Mr. S 's friend A.M. each credibly testified that the Subject Child has numerous friends with whom he interacts on a regular basis. Although some of the Subject Child's interactions may be with children who are chronologically younger than he is, in light of the cognitive and physical limitations of this Subject Child, such interactions may be the most appropriate.
In any event, there is no credible evidence that the Subject Child is afraid to socialize or that relocation to Florida would somehow assist him in socializing.
Most significantly, Ms. D presented no evidence whatsoever about the school system in Florida or the services, if any, that such system would be able to offer to a special needs child such as the Subject Child. Although she testified that the school in Florida is going to mainstream the Subject Child with children of his own age, she submitted no evidence of the school program or any evidence regarding services that any such school could offer to a special needs child such as the Subject Child. Ms. D also failed to submit any evidence of how mainstreaming the child in a school with children of his own age would be comparable to or more beneficial than his current school program at the New York School for the Deaf with respect to his educational and social development.
Indeed, the credible testimony of the teachers and school psychologist established that the Subject Child is doing well in his current school setting at the New York School for the Deaf and that it is an appropriate program for him.
The Court also notes that the evidence established that it has essentially been the same team of doctors who have addressed the extensive medical issues that the Subject Child has faced over the years since he was born. The evidence also established that the Subject Child is likely to face significant future medical issues and surgeries as he grows to adulthood. Although Ms. D testified that she has been given [*7]referrals by her son's doctors of specialists in Florida who could address her son's medical issues, there was no evidence adduced at trial that there are, in fact, physicians in Florida nearby who have the expertise necessary to address her son's many medical needs.
Finally, the Court notes that the Law Guardian supports Ms. D's relocation petition and that she urges the Court to find that Ms. D's past history of ensuring the best possible care for her son - both educationally and medically - is evidence of her ability to ensure the same in Florida. The Court agrees that Ms. D's past history with respect to advocating for and working on behalf of her son is a fact to be (and it has been) considered by the Court, but it simply is not dispositive nor is it even a factor that the Court needs to consider with respect to the issue of relocation.
Accordingly, for all of the reasons set forth above, Ms. D's petition seeking relocation is dismissed for failure to establish her burden of proof.
As noted above, the Subject Child is a special needs child with significant physical and cognitive disabilities. He currently attends a special school year-round that is designed to address those issues. He also has a home health aide to assist him after school as part of the services he obtains from the school district. As no evidence has been presented to indicate that any such school or services would be available to the Subject Child if he were to leave this area, it is in his best interests to live in this area so that such services can be continued. In addition, the Subject Child has a network of doctors, as well as paternal extended family in this area who are available to provide support and assistance to the Subject Child should Mr. S need such assistance. In fact, the credible testimony at trial demonstrated that in the past Mr. S's sister was involved in post-hospitalization care for the Subject Child.
Moreover, the Subject Child has friends as well as extended family members in the area with whom he regularly socializes. The Court also notes that continuous and regular interaction with his father is important to the Subject Child's emotional development.
Should Ms. D decide to relocate despite the Subject Child's inability to do so, such a dramatic change in his life would need to be minimized by preserving as much as possible the Subject Child's consistent and regular schedule. Accordingly, if Ms. D moves out of the Westchester/Bronx area, it is in the Subject Child's best interests for physical custody of the child to be awarded to Mr. S. However, with respect to Mr. S's petition for joint legal custody, such petition is denied, because, unfortunately, the Court finds that the joint custody is not appropriate in this case and thus the Court would grant sole legal custody to Mr. S upon any relocation by Ms. D away from the Westchester/Bronx area.
It is well settled that "joint custody involves the sharing . . . of responsibility for and control over the upbringing [of the child]. . .and imposes . . . an obligation to behave in a mature, civilized and cooperative manner in carrying out joint custody." Brown v. Skalwold, 643 NYS2d 732 quoting, Drummond v. Drummond, 205 AD2d 847. Here, the credible evidence shows that although the parties have, in the past, been able to resolve issues of visitation and other issues regarding their son in a cooperative manner, such interactions have deteriorated; and, more importantly, since the commencement of the litigation, the parties have not, in any significant or meaningful [*8]way, communicated or consulted with each other regarding the Subject Child.
The Court notes that the credible evidence shows that, in the past, the father has had no responsibility with respect to major decisions regarding the Subject Child's health, education, or welfare. The evidence shows that Ms. D has made all major decisions about the child's health, education and welfare and that Mr. S has learned of these decisions and their ramifications primarily through her.
Moreover, communication between the parties about visits and the Subject Child's welfare has deteriorated significantly during the pendency of this litigation. Both of the parties credibly testified that they now cannot or do not speak to each other.
. Accordingly, the Court finds that sole legal and physical custody of the Subject Child to Ms. D is appropriate unless she relocates out of the Westchester/Bronx area and then sole legal and physical custody of the Subject Child shall vest with Mr. S as being in the best interests of the Subject Child.
Thus, Mr. S's petition for joint legal custody and physical custody is denied in part and will be granted in part, for the reasons set forth above, upon any relocation by Ms. D away from the Westchester/Bronx area.
Based upon the foregoing, it is hereby ORDERED that any and all prior Orders concerning custody and/or visitation with the Subject Child are hereby superceded by this Order; and it is further
ORDERED that Ms. D's relocation petition is dismissed; and it is further
ORDERED that if Ms. D remains in the Westchester/Bronx area, she shall have sole legal and physical custody of the Subject Child subject to the terms and conditions of Mr. S's visitation as set forth below; and it is further
ORDERED that GS, Sr. shall have visitation with the Subject Child every weekend from Friday 7:00 p.m. to Sunday at 7:00 pm.; and it is further
ORDERED that GS, Sr. shall have visitation with the Subject Child every extended weekend (in which the Monday immediately following the weekend is a school holiday) during the year from Friday 7:00 p.m. to Monday at 12:00 p.m. ; and it is further
ORDERED that, this visitation schedule is to commence effective August 19, 2005; and it is further
ORDERED that, in addition to the weekend visits, in odd numbered years, Mr. S shall have visitation with the Subject Child on Thanksgiving Day beginning the Wednesday at 7:00 p.m. immediately preceding Thanksgiving through the following Sunday at 8:00 p.m.; at 7:00 p.m. on the day which begins the Subject Child's winter recess from school through Christmas Day at 12:00 noon, and Easter from the Friday at 7:00 p.m. immediately prior to Easter Sunday through Easter Sunday at 7:00 p.m., unless the Subject Child has school recess either immediately prior to Easter or immediately following Easter then Mr. S will have visitation with the Subject Child beginning at 7:00 p.m on the Friday of the last day prior to the recess until 7:00 p.m. of the day immediately preceding school recommencing; and it is further
ORDERED that, in even numbered years Mr. S shall have visitation with the Subject Child on Christmas Day at 12 noon through the Sunday at 7:00 p.m. ending the Subject Child's recess during that time; and it is further
ORDERED that Mr. S shall have one week of visitation with the Subject Child during the summer if the Subject Child's school is in recess from 7:00 p.m. of the last [*9]day of school until 7:00 p.m. of the Sunday immediately preceding school recommencing; and it is further
ORDERED that every Mother's Day shall be spent by the Subject Child with Ms. D irrespective of any other scheduled visitation; and it is further
ORDERED that in even years Mr. S will spend any spring school recess with the Subject Child to the extent that such vacation does not coincide with any Easter school recess with such visitation to commence at 7:00 p.m of the Friday immediately prior to the recess through the Sunday at 7:00 p.m. that immediately precedes school recommencing; and it is further
ORDERED that the Mr. S shall have any such further visitation to which the parties may agree; and it is further
ORDERED that the pick up and the drop off of the Subject Child for these visitations shall alternate between the mother and the father with the mother dropping off the Subject Child to the father's home to commence visits and the father returning the Subject Child to the mother's home to end the visits or at any other location that the parties may agree; and it is further
ORDERED that Ms. D shall provide in writing to Mr. S the names and telephone numbers of school officials/teachers and medical providers on or before September 30 of each year and any time thereafter if and when such information changes between one year and the next, and execute and deliver any and all releases necessary to ensure access of such information to Mr. S; and it is further
ORDERED that no party shall disparage the other in the presence of the Subject Children nor allow any third party to do so. and it is further
ORDERED that Ms. D shall provide Mr. S's name and information as an emergency contact person to all medical personnel and educational providers and; and it further
ORDERED that should Ms. D relocate away from the Westchester/Bronx area, sole legal and physical custody of the Subject Child shall vest in Mr. S.; and the following terms will govern:
ORDERED that any visitation by Ms. D with the Subject Child in Florida will occur during each of the Subject Child's scheduled recesses from school beginning as soon as practicable upon the commencement of the school recess and concluding with the Subject Child being returned to Mr. S by 6:00 p.m of the evening immediately preceding the recommencement of school; and it is further
ORDERED that all costs for any such visitation in Florida will be paid for by Ms. D; and it is further
ORDERED that in addition to any such Florida visits, Ms. D may have any and all visitation with the Subject Child in this Westchester/Bronx area as is practicable, including but not limited to overnight weekend visits; and it is further
ORDERED that Ms. D is directed to turn over to Mr. S, if she relocates away from the Westchester/Bronx area, the Subject Child's original birth certificate, social security card and any other relevant medical and legal documents of the Subject Child; and it is further
ORDERED that Ms. D shall cooperate with Mr. S to ensure that the current medical and educational services that the Subject Child is receiving are not interrupted [*10]because of any change in custody; and it is further
ORDERED that Mr. S shall provide in writing to Ms. D the names and telephone numbers of school officials/teachers and medical providers on or before September 30 of each year and any time thereafter if and when such information changes between one year and the next, and execute and deliver any and all releases necessary to ensure access of such information to Ms. D; and it is further
ORDERED that Mr. S shall provide Ms. D's name and information as an emergency contact person to all medical personnel and educational providers.
This constitutes the Decision and Order of this Court.
DATED: August 11, 2005
 Yonkers, New York
ENTERED:
___________________________
COLLEEN D. DUFFY
ACTING FAMILY COURT JUDGE
DISTRIBUTION:
Footnotes

Footnote 1: The Law Guardian reported on the record that she had extreme difficulty communicating with the Subject Child and recommended against any in camera proceeding as likely being uninformative and not in the Subject Child's best interests.

Footnote 2:Indeed, as discussed later, herein, except for testifying that the Subject Child will be mainstreamed in the Florida school, Ms. D presented no evidence whatsoever about the services or school program in Florida and how such program would address the special needs of the Subject Child.

Footnote 3:Indeed, if the relocation were approved and the Subject Child were residing in Florida in excess of six months before any refusal to pay his visitation to New York occurred, Mr. S 's only recourse might have to be to file a petition for modification or violation in a Florida court which also would require his appearance in Florida and obtaining lodging for the duration of any such proceeding.